UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
HOWARD MERCER, DAVID MERCER,
GEORGIA MERCER, STEVEN MERCER,

                    Plaintiffs,

     -against-

CAROL M. MERCER,

                    Defendant.
------------------------------------------------------------X

**ORDER**
13-CV-4192 (SJF)(WDW)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y
★    JUL 21 2014    ★
LONG ISLAND OFFICE

FEUERSTEIN, J.

On July 24, 2013, plaintiffs Howard Mercer, David Mercer (together with Howard Mercer, the "Mercer sons"), Georgia Mercer, and Steven Mercer (collectively, "plaintiffs") commenced this action against defendant Carol Mercer ("defendant" or "Carol"), alleging, *inter alia*, unjust enrichment, conversion, and breach of contract.[1] [Docket Entry No. 1]. On October 11, 2013, defendant moved to dismiss plaintiffs' complaint.[2] [Docket Entry No. 12]. Now before the Court is the Report and Recommendation of Magistrate Judge William D. Wall dated May 22, 2014 (the "Report"), that defendant's motion to dismiss be granted because: (1) the

---

[1] Plaintiffs' complaint asserts the following substantive causes of action against Carl: (1) unjust enrichment based on Carol's allegedly improper acceptance of funds from one (1) of the trusts created in the will of Norman J. Mercer (the "Marital Trust"); (2) conversion of funds received from the Marital Trust; (3) conversion of over sixty (60) unique sculptures created by Norman Mercer; and (4) breach of contract based on Carol's alleged failure to adequately maintain property located at 33 Ocean Avenue, East Hampton, New York (the "East Hampton Property"). Plaintiffs also assert "causes of action" for a preliminary injunction preventing Carol from using funds of the estate and/or trusts to fund this litigation, and for attorneys' fees.

[2] Defendant moves to dismiss plaintiffs' complaint for: (1) lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), based on the probate exception to federal diversity jurisdiction, and *Colorado River* abstention; (2) failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6); and (3) failure to join necessary parties pursuant to Federal Rule of Civil Procedure 12(b)(7).

probate exception to federal diversity jurisdiction applies to plaintiffs' claims; (2) *Colorado River* abstention is warranted; and (3) plaintiffs' failure to join Bank of New York Mellon, N.A. ("BNY") and Martin D. Newman ("Newman") requires dismissal pursuant to Federal Rule of Civil Procedure 12(b)(7).[3] [Docket Entry No. 45]. On June 5, 2014, plaintiffs filed objections to the Report ("Obj."). [Docket Entry No. 47]. On June 19, 2014, defendant filed a response to plaintiffs' objections. [Docket Entry No. 48]. The Court has fully considered the parties' submissions. For the reasons that follow, Magistrate Judge Wall's Report is adopted in part and rejected in part. The Court accepts the Report's recommendation that plaintiffs' first three (3) causes of action be dismissed for lack of jurisdiction. However, the Court rejects the portions of the Report that recommend dismissal of plaintiffs' breach of contract claim.

I.  Standard of Review

Rule 72 of the Federal Rules of Civil Procedure permits a magistrate judge to conduct proceedings of dispositive pretrial matters without the consent of the parties. Fed. R. Civ. P. 72(b). Any portion of a report and recommendation on dispositive matters to which a timely objection has been made is reviewed *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). However, "when a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error." *Frankel v. City of N.Y.*, Nos. 06 Civ. 5450, 07 Civ. 3436, 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009). The

---

[3] The facts underlying this action are set forth in the Report and are hereby incorporated by reference. *See* Report, at 1-6. The same facts are at issue in a companion case filed in this Court by plaintiffs against BNY and Newman. *See Mercer, et al. v. Bank of New York Mellon, N.A., et al.*, No. 13 Civ. 5686 (SJF)(WDW) (the "13-5686 Action"). Together with Carol, BNY and Newman serve as co-executors of Norman Mercer's will, and co-trustees of the testamentary trusts created therein. BNY and Newman moved to dismiss the 13-5686 Action based on primarily the same grounds raised by Carol in the instant action. Magistrate Judge Wall has issued a report recommending that BNY's and Newman's motions to dismiss the 13-5686 Action be granted. An order on BNY's and Newman's motions to dismiss in the 13-5686 Action is being issued contemporaneously with this decision.

Court is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are made. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). To accept the report and recommendation of a magistrate judge on a dispositive matter to which no timely objection has been made, the district judge need only be satisfied that there is no clear error on the face of the record. *See* Fed. R. Civ. P. 72(b); *Johnson v. Goord*, 487 F. Supp. 2d 377, 379 (S.D.N.Y. 2007), *aff'd*, 305 F. App'x 815 (2d Cir. Jan. 9, 2009); *Baptichon v. Nev. State Bank*, 304 F. Supp. 2d 451, 453 (E.D.N.Y. 2004), *aff'd*, 125 F. App'x 374 (2d Cir. Apr. 13, 2005). Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Plaintiffs object to each finding underlying Magistrate Judge Wall's recommendation that defendant's motion to dismiss be granted. Accordingly, the Court is required to conduct a *de novo* review.

II. Analysis

A. Probate Exception to Federal Jurisdiction

In *Markham v. Allen*, the Supreme Court held that federal courts "have jurisdiction to entertain suits in favor of creditors, legatees and [heirs] and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946) (internal quotation marks and citation omitted). In *Marshall v. Marshall*, the Supreme Court labeled the words "interfere with the probate proceedings" from the *Markham* opinion as "enigmatic" and

sought to clarify the scope of the probate exception. 547 U.S. 293, 310-11, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006). The Supreme Court held that "the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.* at 311-12, 126 S.Ct. 1735. "[S]o long as a plaintiff is not seeking to have the federal court administer a probate matter or exercise control over a res in the custody of a state court, if jurisdiction otherwise lies, then the federal court may, indeed must, exercise it." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 106 (2d Cir. 2007).

Thus, as Magistrate Judge Wall correctly noted, this Court must consider whether: (1) "the money distributed to Carol from the Marital Trust u/w Norman J. Mercer, the sculptures, and/or the East Hampton property are in the custody of the state court, such that this court lacks jurisdiction over them," or (2) "ruling on the causes of action set forth by the plaintiffs would somehow amount to this court's 'administering the estate.'" Report, at 11.

1. Marital Trust Funds

Plaintiffs' first two (2) causes of action – unjust enrichment and conversion – allege that Carol improperly received one hundred seventy-six thousand nine hundred eighty-seven dollars and forty-eight cents ($176,987.48) from the Martial Trust. As Magistrate Judge Wall correctly explained, the funds that plaintiffs claim were improperly received by Carol "are assets that were distributed to the testamentary trusts that were created pursuant to the terms of the Marital Agreement and the will." Report, at 16. Magistrate Judge Wall concluded that the probate exception bars this Court from considering these claims because "the distribution of funds from a

trust created by the will and still under the control of the Surrogate would require this court to both interfere in the administration of the estate and exercise jurisdiction over property in the custody of the state court." Report, at 15.

In objecting to this finding by Magistrate Judge Wall, "Plaintiffs are relying upon the fact that no Trust accounting exists in the Record" and that "[t]o date, the Trustees have not filed their accounting." Obj., at 11-12. However, pursuant to a pretrial order of the Surrogate's Court dated March 11, 2014 [Docket Entry No. 50-1], the trustees filed a trust accounting with the Surrogate's Court on June 5, 2014. *See Accounting by BNY Mellon, N.A., Martin D. Newman & Carol Mercer as Trustees of the GTS Non Exempt Marital Trust created U/W of Norman J. Mercer*, No. 211 P 2008/D (Sur. Ct. Suffolk County 2014).[4]

While plaintiffs correctly admit that if "[their] claims are successful, the wrongful distributions received by Carol M. Mercer will be returned to the Trust," plaintiffs improperly conclude that the "Surrogate's Court will not see the result of this action as the Trusts are not presently before the Surrogate's Court." Obj., at 11-12. The filing of the trust accounting on June 5, 2014 squarely placed the trusts before the Surrogate's Court. Therefore, the Court overrules plaintiffs' objections and holds that probate exception applies to plaintiffs' claims

---

[4] In their objections to the Report, which were also filed on June 5, 2014, plaintiffs contend that "[e]ven if the Trustees were to file a trust accounting with the Surrogate's Court tomorrow, next week or next year it could not, as a matter of law, have any possible bearing on [the Report], as to whether or not this Court has subject matter jurisdiction over this case because it is undisputed that no trust accounting had been filed with the Surrogate's Court at the time Plaintiffs filed their complaint." Obj., at 3. This argument is unavailing. By objecting to the Report, plaintiffs have invoked this Court's *de novo* review of whether the probate exception applies to plaintiffs' claims. Upon *de novo* review, this Court takes judicial notice of the trust accounting filed by the trustees with the Surrogate's Court on June 5, 2014, as required by the March 11, 2014 pretrial order. *See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

5

relating to Carol's allegedly improper receipt of funds from the Marital Trust.[5] *See Lefkowitz*, 528 F.3d at 107 ("With these counts, Plaintiff seeks to mask in claims for federal relief her complaints about the maladministration of her parent's estate, which have been proceeding in probate courts" and would require the federal court "to assert control over property that remains under the control of state courts."). Accordingly, plaintiffs' claims regarding the Marital Trust funds are dismissed.

2. Sculptures

Plaintiffs' third cause of action alleges that Carol converted over sixty (60) unique sculptures and has failed to distribute the sculptures, or their equivalent value, to the Trusts u/w Norman J. Mercer. Compl. ¶¶ 51-56. Magistrate Judge Wall concluded that the probate exception applies to this claim, just as with the first two (2) causes of action, because "of the state court's custody of the [sculptures]" and "on the basis of the ongoing administration of the estate." Report, at 19. In objecting to this finding by Magistrate Judge Wall, plaintiffs readily acknowledge that "the sculptures have been transferred to the Trusts." Obj., at 13. As explained *supra*, due to the filing of the trust accounting on June 5, 2014, the trusts are now under the control of the Surrogate's Court. Therefore, the probate exception applies to plaintiffs' claim concerning the sculptures because "[t]o provide the relief plaintiff seeks in [this claim], the

---

[5] Plaintiffs' argue that the "actions complained of concern [Carol's] improper acceptance of funds, not the improper distributions of funds." Obj., at 12 n.3; *see also id.* at 7 ("The improper receipt of corpus of the Trusts by Carol M. Mercer is the subject of the specific claims alleged in this action, which has not been raised in the Surrogate's Court."). Regardless of how plaintiffs' characterize their claims – as Carol's improper receipt of Martial Trust funds, or the improper distribution of Marital Trust funds to Carol asserted in the 13-CV-5686 Action – in essence, plaintiffs are complaining about the mismanagement of trust assets and malfeasance by the fiduciaries. Accordingly, these claims are treated the same and are both subject to the probate exception.

6

federal court would have to assert control over property that remains under the control of the state courts." *Lefkowitz*, 528 F.3d at 107.

Assuming, *arguendo*, that the trusts are not presently before the Surrogate's Court, the probate exception would still divest this Court of subject matter jurisdiction to consider plaintiffs' sculpture claim. In the Report, Magistrate Judge Wall considered an order of the Surrogate's Court dated August 29, 2012, which disposed of applications by the Mercer sons for the revocation of letters testamentary and letters of trusteeship issued to Carol Mercer, Newman, and BNY and for "the appointment of an independent fiduciary to complete the administration of the estate and administer the trusts." Decl. of Donald A. Pitofsky [Docket Entry No. 22], Ex. 28 ("Surr. Order, 8/29/12"), at 2. Magistrate Judge Wall concluded that "the Surrogate specifically included issues about the sculptures as part of the upcoming proceedings in that court." Report, at 19-20 (citing Surr. Order, 8/29/12, at 9).

Plaintiffs now argue that "the Surrogate was considering the actions of the executors as a basis for removing the fiduciaries, and not whether the sculptures, or any other asset of the Trusts, should be returned to the Trusts." Obj., at 13. However, plaintiffs' reading of the August 29, 2012 order ignores that the Surrogate's Court specifically considered the Mercer sons' allegations that Carol had not provided an accurate inventory of the sculptures and prevented them from being sold. Surr. Order, 8/29/12, at 4, 6. The Surrogate's Court reserved for determination at trial "whether the acts complained of," including plaintiffs' allegations about the sculptures, "have harmed the estate and ultimately the trusts, and whether there is so much friction or hostility between Carol Mercer and the Mercer sons as to interfere with the administration of these entities." *Id.* at 9. Therefore, the probate exception applies to these

claims because they are subject to the ongoing administration of the estate and trusts in the Surrogate's Court. *See Lefkowitz*, 528 F.3d at 107 (federal court may not "take over the administration of estate assets pending in probate courts"); *cf.* Order Denying Mot. to Remand at 7, *Rudman v. Rudman*, No. 3:08-CV-1103-L (N.D. Tex. Dall. Div. Mar. 31, 2009) (probate exception inapplicable where "both Trusts have terminated").[6] Accordingly, plaintiffs' claim that Carol converted the sculptures is dismissed for lack of subject matter jurisdiction.

### 3. East Hampton Property

Plaintiffs' fourth cause of action for breach of contract alleges that Carol has failed to adequately maintain the East Hampton Property in violation of the Marital Agreement[7] and the Settlement Agreement.[8] Compl. ¶¶ 35, 59. Magistrate Judge Wall found that the "Settlement Agreement is part of the docket in the Surrogate's Court," and therefore, "violations of that document are before that court and can be addressed by it." Report, at 20. Magistrate Judge

---

[6] Magistrate Judge Wall did not consider this unpublished opinion relied upon by plaintiffs in its opposition to defendants' motion to dismiss because plaintiffs "provided neither a Lexis nor Westlaw citation nor a copy of the opinion and no way to access the case." Report, at 14. Plaintiffs submitted a copy of the opinion with their objections to the Report. [Docket Entry No. 47-1]. A reading of the opinion reveals that it in no way supports plaintiffs' argument because, unlike the instant case, the trusts in *Rudman* had both been terminated.

[7] The Marital Agreement provides that "[i]f at the date of her death Carol owns the [East Hampton Property], it shall be sold, and the net proceeds, after income taxes, shall . . . be divided into equal Parts: Part A and Part B." Compl., Ex. A ("Marital Agreement"), ¶ 6(b). With the proceeds divided into Part B, "Carol shall establish separate Trusts for the benefit of Norman's issue." *Id.* ¶ 6(b)(2). Plaintiffs argue that "[a]s third party beneficiaries of the Marital Agreement," they "have an interest in the maintenance and state of repair of the East Hampton Property." Compl. ¶ 34.

[8] All parties to this action are co-signatories to the Settlement Agreement. The Settlement Agreement provides that "Carol, individually, and Carol, Newman and BNY as co-executors and co-trustees agree to pay monthly payments on the BNY Credit Line and to comply with all of the terms of the BNY Credit Line loan until the East Hampton Property is sold."). *See* Compl., Ex. D ("Settlement Agreement"), ¶ 13. Pursuant to the BNY Credit Line loan, Carol is obligated to "keep the Property in good repair" and "will not allow the Property to deteriorate." *See* Decl. of Donald Novick [Docket Entry No. 24], Ex. A ("BNY Credit Line"), ¶ 6.

8

Wall further concluded that "[a]lthough the East Hampton property may not be in the custody of the state court, the terms of the Settlement Agreement and the Marital Agreement . . . are so inextricably intertwined with the estate and trust administration, that this court should not interfere with that administration, and the probate exception should apply." Report, at 21.

Plaintiffs objects to this recommendation, noting that "the East Hampton property was never an asset of the Estate of Normal J. Mercer" and "that the Surrogate never exercised any jurisdiction over that property." Obj., at 14. The Court agrees with plaintiffs' objections and rejects this portion of the Report. In concluding that "the probate exception should apply" to the East Hampton Property claim because it is "so inextricably intertwined with the estate and trust administration," Magistrate Judge Wall relied on the overly-broad recitation of the probate exception set forth in *Markham* that has been superseded by *Marshall*. Report, at 21. *Marshall* made clear that even where federal jurisdiction might "interfere" with the administration of an estate, "so long as a plaintiff is not seeking to have the federal court administer a probate matter or exercise control over a res in the custody of a state court, if jurisdiction otherwise lies, then the federal court may, indeed must, exercise it." *Lekfowitz*, 528 F.3d at 106 (explaining the probate exception as limited by *Marshall*). *Id.* Furthermore, "where exercise of federal jurisdiction will result in a judgment that does not dispose of property in the custody of a state probate court, even though the judgment may be intertwined with and binding on those state proceedings, the federal courts retain their jurisdiction." *Lefkowitz*, 528 F.3d at 106.

The East Hampton Property was not an estate asset, and thus, was never in the custody of the Surrogate's Court. Therefore, "[w]hile the issues involved in [plaintiffs'] remaining claims undoubtedly intertwine with the litigation proceeding in the probate courts, in addressing the

claims, the federal court will not be asserting control of any *res* in the custody of a state court." *Id.* (citing *Marshall*, 547 U.S. at 311-12, 126 S.Ct. 1735). Nor has any claim concerning the East Hampton Property ever been raised in the Surrogate's Court. Thus, plaintiffs' breach of contract claim concerning Carol's allegedly inadequate maintenance of the East Hampton Property is not part of the administration of the estate in the Surrogate's Court.

However, the Mercer sons sought to enforce an encumbrance on the East Hampton Property in an action against Carol, BNY, and Newman brought in this Court, which was closed following the submission by the parties of a stipulation of dismissal with prejudice (the "Prior Federal Action"). *See Mercer, et al. v. Mercer, et al.*, No. 09 Civ. 0002 (ADS)(AKT). The Settlement Agreement that plaintiffs now claim was breached by defendant was filed with the Surrogate's Court, but intended not only to settle the contested probate proceeding, but also to settle the Prior Federal Action, including the claims regarding the East Hampton Property.[9] The Court rejects the Report's recommendation that "the probate exception should apply" because "violations of [the Settlement Agreement] are before [the Surrogate's Court] and can be addressed by it." Report, at 21. To hold that this Court lacks jurisdiction to consider claims alleging breach of the Settlement Agreement, which resolved the claims concerning the East Hampton Property at issue in the Prior Federal Action, would ignore the limited scope of the probate exception established. *See Lefkowitz*, 528 F.3d at 106 (noting where federal court is not being asked to "administer an estate" or "exercise control over a res in the custody of a state

---

[9] *See* Settlement Agreement, ¶ 11 ("Contemporaneously with the execution of this Settlement Agreement, the attorneys for the parties in the [Prior] Federal Action will execute a stipulation of Dismissal with prejudice . . ."); *id.* ¶ 13 ("The parties agree that the BNY Credit Line and Mortgage secured by the East Hampton Property, which is the subject of one of the claims in the Federal Action, shall not exceed a maximum credit amount or obligation of $3,500,000.00 . . .").

10

court," "if jurisdiction otherwise lies, then the federal court may, indeed must, exercise it"). Therefore, the probate exception does not apply to plaintiffs' breach of contract claims based on defendant's purported failure to adequately maintain the East Hampton Property, nor does it apply to other potential claims of breach of the Settlement Agreement that do not involve property within the custody of the Surrogate's Court.

B. Breach of Contract Claim

Because the Court holds that the probate exception applies to plaintiffs' first three (3) causes of action, those claims are hereby dismissed. Therefore, plaintiffs' only remaining substantive cause of action is for breach of contract, whereby plaintiffs demand a judgment, in an amount to be determined at trial, for the "considerable damages and structural degradation" resulting from the "long-term neglect over an approximate term of five to six years which is likely to have an adverse impact on the resale value of the [East Hampton Property]." Compl. ¶ 60-61. Thus, the Court reviews defendant's additional grounds for dismissal only insofar as they apply to plaintiffs' breach of contract claim.

1. Colorado River Abstention

In *Colorado River Water Conservation District v. United States*, the Supreme Court held that a federal court may abstain from exercising jurisdiction, in certain "exceptional circumstances," when parallel state court litigation could result in "comprehensive disposition of litigation" and abstention would conserve judicial resources. 424 U.S. 800, 817-18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (internal quotation marks and citation omitted). "Before engaging in the analysis of whether to abstain under *Colorado River*, a court must determine if the concurrent state and federal proceedings are parallel." *United States v. Blake*, 942 F. Supp. 2d

285, 293 (E.D.N.Y. 2013) (citing *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). "In determining whether two actions are parallel for purposes of *Colorado River* abstention, a court may consider whether the actions involve the same (i) parties, (ii) subject matter, and (iii) relief requested." *Gov't Emps. Ins. Co. v. Leica Supply, Inc.*, No. 11-cv-3781, 2014 WL 1311544, at *4 (E.D.N.Y. Mar. 28, 2014) (internal quotation marks and citation omitted). In order to be parallel, there must be "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 287 (E.D.N.Y. 2013) (internal quotation marks and citation omitted). "Any doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction." *Id.* at 288 (internal quotation marks and citation omitted).

Magistrate Judge Wall concluded that this action is parallel to the Surrogate's Court proceeding because, "[a]s explained in regard to the probate exception, I believe that all of the claims belong in the Surrogate's Court and can and will be decided there." Report, at 23-24. Plaintiffs' objections to this finding focus on the lack of similarity between the parties and the inability of "the Surrogate's Court [to] dispose of tort claims between living persons." Obj., at 15-17. As explained *supra*, plaintiffs' breach of contract claim is not before the Surrogate's Court and is not part of the administration of the estate. Therefore, "the state litigation will [not] dispose of" plaintiffs' claim regarding Carol's purported failure to adequately maintain the East Hampton Property. Accordingly, the Court concludes that this action is not parallel to the Surrogate's Court proceeding and *Colorado River* abstention is not warranted with respect to plaintiffs' breach of contract claim.

2. Failure to Name Necessary Parties

Magistrate Judge Wall recommends a finding that BNY and Newman, co-signatories to

12

the Settlement Agreement, "are necessary parties because the court cannot accord complete relief among existing parties without them." Report, at 27. Insofar as the Court need only consider whether BNY and Newman are necessary parties to plaintiffs' remaining substantive claim, the Court agrees with plaintiffs that "[t]he claims against Carol involve her breaches of the Marital Agreement and Settlement Agreement." Obj., at 21 (quoting Pls.' Memo. in Opp. to Def.' Mot. to Dismiss, at 15). As plaintiffs correctly explain, if they are successful on this claim, "the Trustees [will not be] required to do anything whereas Carol M. Mercer, individually, will be required to pay . . . damages based upon breach of contract." *Id.* Therefore, plaintiffs can obtain complete relief on this claim without the presence of BNY and Newman. Accordingly, the Court rejects Magistrate Judge Wall's recommendation that the complaint be dismissed for failure to name necessary parties.

3. Failure to State a Claim

Magistrate Judge Wall recommends rejecting defendant's argument that the first four (4) causes of action, including plaintiffs' breach of contract claim, be dismissed as implausible. Report, at 28-29. No objections to this portion of the Report have been made. Accordingly, the Court accepts this portion of the Report upon concluding that it is not facially erroneous. Therefore, plaintiffs' breach of contract claim remains pending.

C. Request for Preliminary Injunction and Attorneys' Fees

Magistrate Judge Wall concluded that the fifth "cause of action" for preliminary injunction is a "form of relief, not a cause of action," and that under the circumstances of this case, the sixth "cause of action" for attorneys' fees "do[es] not constitute a separate cause of action" because the "fees [sought] would flow from provisions in the Agreements at issue if breaches in those agreements were established." Report, at 29. Plaintiffs object to these

13

findings. Obj., at 22. The Court notes that plaintiffs have not made a motion for preliminary injunction to prevent Carol from using estate or trust assets to fund the instant litigation. Furthermore, to the extent that plaintiffs might be entitled to an award of attorneys' fees, such relief would flow from plaintiffs' breach of contract claim, to the extent they are successful. The Court agrees with Magistrate Judge Wall's recommendation that this request should be "rephrased" if the case proceeds. Accordingly, these "causes of actions" are dismissed but may be "rephrased" as requests for relief.

III. Conclusion

For the foregoing reasons, Magistrate Judge Wall's Report is adopted in part and rejected in part. The Court accepts the portion of the Report which recommends the probate exception to federal jurisdiction precludes this Court from considering plaintiffs' claims for unjust enrichment and conversion relating to the marital trust disbursement, and the claim for conversion of the sculptures. Accordingly, those claims are dismissed. The Court rejects the portion of the Report that recommends finding that plaintiffs' breach of contract claim is subject to the probate exception and that *Colorado River* abstention is warranted. Defendant's motion to dismiss is denied with respect to plaintiffs' breach of contract claim based on Carol's allegedly inadequate maintenance of the East Hampton Property because: (1) the probate exception is inapplicable; (2) *Colorado River* abstention is not warranted because plaintiffs' remaining breach of contract claim is not parallel to the Surrogate's Court proceeding; and (3) plaintiffs have alleged a plausible breach of contract claim. Plaintiffs' breach of contract claim remains pending.

Pursuant to Rule 5(D) of the individual rules of the Honorable Sandra J. Feuerstein, United States District Judge, this matter is respectfully referred to Magistrate Judge Wall, for an initial conference and all pretrial matters. All discovery must be completed by September 22,

2014. A pretrial conference is scheduled before Judge Feuerstein in Courtroom 1010 at the Central Islip Courthouse, located at 100 Federal Plaza, Central Islip, NY 11722, on October 14, 2014 at 11:15 a.m.

**SO ORDERED.**

                                          s/ Sandra J. Feuerstein
                                          Sandra J. Feuerstein
                                          United States District Judge

Dated: July 21, 2014
       Central Islip, New York